LOCKETT v. BEAVER.

(*Knoxville.*    October 10, 1896.)

GARNISHMENT.    *Property and dues subject to.*

Garnishment, under the provisions of our statutes, reaches and
fastens on any debt, whether due or not, owing by the gar-
nishee, or any property of the debtor in his hands, either at
the date of service of the notice of garnishment, or at the date
of the answer, or in the meantime.

Code construed: §§ 4816–4818, 4820, 4826, 5245 (S.); §§ 3801–3803,
3805, 3811, 4226 (M. & V.); §§ 3088–3090, 3092, 3098, 3485 (T. & S.).

Cases cited: Matheny v. Hughes, 10 Heis., 405; English v. King,
10 Heis., 666; VanVleet v. Stratton, 91 Tenn., 477.

FROM KNOX.

Appeal from Chancery Court of Knox County.
H. B. LINDSAY, Ch.

GREEN & SHIELDS for Lockett.

E. D. DAVIS for Beaver.

WILKES, J.    This case involves a question of
garnishment.    The case comes to us by appeal from
the Court of Chancery Appeals, reversing the decree
of the Chancellor.    A summary of the findings of
fact, as made by the Court of Chancery Appeals,
is that when the bill of interpleader in the case was

filed, Lockett & Brown were indebted to J. B. Harrison in the sum of $400 for services rendered in securing a loan from the Maryland Insurance Co. The services commenced December 15, 1894. Garnishment notices were served on Lockett & Brown December 31, 1894. The insurance company agreed to make the loan January 4, 1895, if certain conditions were complied with. Harrison's service in the matter continued until January 18, 1895, and he was not entitled to his compensation or commission until the final consummation of the entire matter, on January 18, 1895. The return day of the garnishments was fixed for January 11, 1895, but it was continued for answer to January 26, 1895, and the bill of interpleader was filed on that day before judgment was rendered. This interpleader bill made one W. H. Perkins a party, who was claiming the commission by assignment from Harrison. His rights need not now be considered.

As it appears, Lockett & Brown were not notified of the assignment until after the garnishment notice was served upon them. And it is conceded that the only question now before us is whether the garnishment creditor can hold the $400 at all under his proceeding, and that it is not a question of priority. The exact legal question presented is, does the garnishment lien attach as of the date of the levy of the garnishment, and does it depend upon the facts then existing, or upon the facts as they exist when the answer is made? At the time the garnishment was

served, Brown & Lockett owed Harrison nothing, but
they had a contract with him by which, on certain
conditions and future contingencies, they would become
indebted to him.    At the time of answer, the con-
ditions had all been met, and the contingencies no
longer existed, and Brown & Lockett were at that
date indebted to the debtor, Harrison.

Complainants' contention is that they can hold
whatever was owing when the answer was made, as
well as when the garnishment writ was served; the
defendants' is, that only such indebtedness can be
reached as was in existence when the writ was served.

In some of the text-books and cases it is said that
a debt must exist and be absolutely payable, either
at the present or in the future, and not dependent
on any contingency at the time of service of the
process.    Am. & Eng. Enc. L., Vol. VIII., p. 1194.
And in the same work it is said that the liability
of the garnishee is not affected by the fact that
subsequent to the service of the process, but before
final trial, the debt becomes absolute.    Am. & Eng.
Enc. L., Vol. VIII., p. 1195.

In Shinn on Attachment and Garnishment, Vol. II.,
p. 480, it is said that it is a universal require-
ment that there must be an absolute existing debt,
even though its period of payment may not yet have
arrived, and in the next section (481*g*) it is stated
that the indebtedness must not be contingent.    See,
also, Freeman on Ex., Vol. I., p. 164.    In the
same work (Sec. 515, note), it is said: "In most

States there must, in fact, be an actual existing indebtedness at the time of the service of the writ. In some of them the debt must be actually due, but in others it is sufficient if the indebtedness be existing at the time of service and due when judgment is rendered,'' citing many cases; and continuing: ''In a few States only is the garnishee held liable for money or other chattels which are received by him after the service of the writ.'' Citing *Shultz* v. *Hobensack*; 20 Pa. St., 412; *Silverwood* v. *Billas*, 8 Watts (Pa.), 420; *Hays* v. *Lycoming Fire Ins. Co.*, 99 Pa. St., 621; *Seymore* v. *Cooper*, 25 Vt., 141. These holdings are cited as throwing some general light upon the questions involved, but at last the case must necessarily rest upon the proper construction of our statutes relating to attachment and garnishment proceedings.

The Court of Chancery Appeals refer to the case of *Van Vleet* v. *Stratton*, 7 Pick., 477, as being an adjudication directly in point. The learned Judge in that case uses the language that ''when the statute speaks of debts liable under the writ, it does not mean an intangible expectancy depending on the will of the debtor, but a chose in action in existence at the moment of the levy. We think the question really involved in the case in 7 Pickle was whether an employer might pay his employee his wages in advance when the effect would be to prevent the service of a garnishment.

The statute, (M. & V.) Code, § 3801, provides that the garnishee may be required to answer:

"1. Whether he is, or was at the time of the garnishment, indebted to the defendant, and, if so, how and to what amount.

"2. Whether he had in his possession or under his control any property, debts, or effects belonging to the defendant at the time of serving the notice, or has at the time of answering, or has had at any time between the date of service and the time of answering, and, if so, the kind and amount.

"3. Whether there are, to his knowledge or belief, any, and what, property, debts, and effects in the possession or under the control of any other, and what, person."

Section 3802 provides that such other questions may be put to him by the Court or judgment creditor as may tend to elicit the information sought.

Section 3803: "All property, debts, or effects of the defendant in the possession of the garnishee or under his control, shall be liable to satisfy the plaintiff's judgment, from the service of the notice or from the time they came to his hands, if acquired subsequent to the notice and before judgment."

Construing these statutes together, we are of opinion that it is their evident meaning and purpose to require the party garnisheed to answer whether he was indebted to the judgment debtor at the time the garnishment notice was served upon him or had any of the debtor's property at that time.

If he had, the garnishment fastened upon it so as to prevent the payment of any debt to the judg-

ment debtor, or any transfer or delivery of his property after that time.

The statutes also proceed to ascertain whether the party garnisheed is at the time of answering indebted to the judgment debtor, or at that time had any of the debtor's property; if so, the garnishment in the same way fastened upon it upon the coming in of the answer making the disclosure.

The Court of Chancery Appeals construed these sections differently and as holding that only debts owing when the notice was served could be held, and such as come into existence after service but before answer could not be held, and in this we think they are in error; and the proper construction is, that if, either at the time of service of the notice or at the time of the answer, or in the meantime, there is a debt owing from the garnishee or property in his hands belonging to the debtor, it is seized by the garnishment proceeding and may be subjected by proper order of the Court or Justice if due; and, if not due, judgment may be rendered and execution stayed till the debt falls due. Code (M. & V.), §§ 3805, 3811, 4226; *Matheny* v. *Hughes*, 10 Heis., 405; *English* v. *King*, 10 Heis., 666, 573; Caruthers' History of a Lawsuit, Secs. 94, 471, 472, 473.

It results that the decree of the Court of Chancery Appeals must be reversed and the decree of the Chancellor affirmed.