JOE FRAZIER *v.* NASHVILLE VETERINARY HOSPITAL.

*(Nashville.* December Term, 1917.)

1. **EXEMPTIONS.** Garnishment. Statutes. Construction.

Under Acts 1905, chapter 376, section 2, providing for exemptions from attachment and garnishment of ninety per cent. if the income is less than $40 per month, the words "per month" and "income" mean the aggregate income during any given calendar month. (*Post, p.* 443.)

Acts cited and construed: Acts 1871, ch. 71; Acts 1905, ch. 376, sec. 2.

2. **EXEMPTIONS.** Garnishment. Statutes. Construction.

Under Acts 1905, chapter 376, section 2, as to exemptions, those who earn less than $40 per month have ninety per cent. of their wages exempt, and those who earn $40 per month have $36 exempt, and are not protected above that sum. (*Post, p.* 443.)

3. **EXEMPTIONS.** Garnishment. Statutes. Construction. ''Income.''

Under Acts 1905, chapter 376, section 2, as to exemptions, the amount of income is determined by all the debtor has collected from his employer or received from any other source during the month, as well as the sum that may belong to him, earned or collectable, but not actually received. (*Post, pp.* 443, 444.)

4. **CONSTITUTIONAL LAW.** Exemptions. Class legislation.

Acts 1905, chapter 376, section 2, providing a ninety per cent. exemption for persons with an income of $40 per month or less, and a maximum exemption of $36 to persons earning over $40 per month, is not unfair discrimination, but such classification is reasonable. (*Post, pp.* 444, 445.)

5. **EXEMPTIONS.** Garnishment. Rights of creditors.

Under Acts 1905, chapter 376, the creditor cannot, day by day, or week by week, seize the debtor's income by garnishment, but

Frazier v. Nashville Veterinary Hospital.

must wait until a monthly income has accumulated in order to determine the exemption. (*Post, pp.* 445-452.)

Acts cited and construed: Acts 1895, ch. 192; Acts 1899, chs. 1, 38.

Cases cited and approved: Waite v. Franciola, 90 Tenn., 191; Van Vleet v. Stratton, 91 Tenn., 473; Lockett v. Beaver, 97 Tenn., 396; Weaver v. Hill, 97 Tenn., 402; Adcock v. Smith, 97 Tenn., 373.

6. **EXEMPTIONS.** Garnishment. Statutes.

Acts 1905, chapter 376, providing the exemptions from execution, attachment, and garnishment, was intended to cover the whole subject of salary, wage, or income exemption and takes the place of all other statutes on those subjects. (*Post, p.* 452.)

Cases cited and approved: Malone v. Williams, 118 Tenn., 390; State ex rel. v. Vanderbilt University, 129 Tenn., 326.

FROM DAVIDSON.

Appeal from the Circuit Court of Davidson County. —R. E. Blake, Special Judge.

Tillman & McCall, for appellant.

W. F. Davis, for appellee.

Mr. Chief Justice Neil delivered the opinion of the Court.

The facts agreed upon by counsel in the trial court, and here, are as follows:

Joe Frazier earned wages working by the hour for the National Casket Company, and there was paid to him during the first three weeks of June, 1917, and

within thirty days prior to the service of the garnishment, more than $36; and during the last week of June, 1917, ending on the day of the service of the garnishment, he earned the sum of $13.45, which the garnishee, the National Casket Company, answered was due and owing to him as wages at the time of the service of the garnishment. The trial court, on these facts, rendered judgment against the garnishee for $13.45, from which an appeal was prayed.

The appeal was prosecuted to this court rather than to the court of civil appeals on the ground that certain constitutional questions were involved.

The decision of the question presented turns on the construction of chapter 376 of the Acts of 1905.

This act was passed, as stated in the caption, "to amend an act entitled 'An act to amend the exemption laws, and to comprise them all in one act,' it being chapter 71," etc., of the act of January 31, 1871. We reproduce, in a later part of this opinion, the first section of the act of 1871 (Acts 1870-71, chapter 71), which was the part amended. It is sufficient to state now merely that it gave an exemption of $30 of the wages of "mechanics or other laboring men." Chapter 376 of the Acts of 1905, in the body, goes no further than to amend section 1 of the act of 1871. We need to reproduce here only section 2 of the act of 1905, which thus restates section 1 of the act of 1871, as amended:

"Sec. 2. That there shall be exempt from execution, attachment, and garnishment ninety (90%) per

centum of the salary, income, or wages of every person earning a salary or wages, or drawing an income of forty ($40) dollars or less per month, and who is eighteen years of age or upward or is the head of a family, and is a resident of the State of Tennessee: Provided, that the lien created by the service of garnishment, execution, or attachment shall only affect ten (10%) per centum of such salary, wages, or income earned at the time of service of process. And there shall be exempt from execution, attachment, or garnishment thirty-six ($36) dollars of the salary, wages, or income of every person earning a salary, wages, or income in excess of forty ($40) dollars per month who is eighteen years of age or upward or who is the head of a family, and who is a resident of the State of Tennessee: Provided, that the debtor shall only pay the costs of one garnishment on each debt on which suit is brought.''

The first point to be determined is the meaning of the expression ''per month.'' Obviously it is not merely equivalent to employment ''by the month,'' since the exemption is not only in favor of wage-earners, but also in favor of any one who has an ''income'' from any source, if such person be eighteen years old, or upwards, or the head of a family, and a resident of the State. Clearly this income may be derived from more than one source. The purpose of the statute was to aggregate this income during any given (Code, section 52) calender

month, and to put in one class those who receive
"forty dollars or less" per month, or during any
month, and into another class those who receive
"over forty dollars." An earning or income of $40
during the month is the test figure. Those who earn
or receive more than that sum are not protected at
all above that sum. As to that sum they have a
protection or exemption of all over ten per cent.—that
is, $36. Those who earn or receive just $40 or less
have the same protection—all over ten per cent. For
example, one who earns during the month only $25
is subject to garnishment process for only two dol-
lars and fifty cents. If the sum he has earned has
suffered one garnishment, to the extent of the two
dollars and fifty cents, there can be no other on that
month's earnings.

It is essential to the purpose intended to be ef-
fected by the act that the test sum shall embrace
what the debtor may have collected from his employ-
er, or received from his "income" from any other
source, during the month, as well as the sum that
may belong to him, earned, or collectible from any
source, but not actually received by him at the time
the garnishment is served. The true measure is the
income during the month. The garnishment will
seize ten per cent. of the whole, if so much remains
earned and outstanding at the time it is served, or
whatever part of the ten per cent. remains earned
and unpaid to the debtor at that time. If the debtor
earns wages, or has a monthly income of "over forty
dollars" per month, only ten per cent. of the $40 is

garnishable. If he has collected from his employer, or from the source of his income, all except ten per cent. of $40 of his monthly wage, or income, that per cent. or any aliquot part of it is subject to seizure. And all of the excess of earning or income of such persons above $40 is subject; that is, his exemption is only ninety per cent. of $40—$36.

There seems to us, under the foregoing construction, no unfair discrimination between those who earn "over forty dollars," and those who earn "forty dollars or less." Both are subject to the same rule. Nor is there any impropriety in the use of "forty dollars" as a test figure. This was a matter wholly under the control of the legislature. There is no constitutional objection in the way. The classification into those earning "over forty dollars." and those earning "forty dollars or less," is reasonable. The legislature could have exempted all incomes, but obviously that would have been very bad policy. Some figure had to be adopted as a basis. Why not $40? No doubt the knowledge of the members of the legislature, as men of practical affairs, indicated to them that the figure adopted would apply to most of the small earners who needed, not only protection from "grasping creditors," but also a line of credit that would enable them, in time of stress, to obtain supplies without ready money.

It is urged as a hardship on those earning "forty dollars or less" that their employers are subject to garnishment at any time for the ten per cent., thus

imperiling the workers' chances for work, since employers of labor will not long permit themselves to be subjected to such repeated annoyances, and will make their escape by discharging the unfortunate or improvident employee; while in the case of those who earn "over forty dollars" a round exemption of $36 is provided, and that until he has received as much as $36 his wages cannot be seized. However, as we have stated, a month is the test period. So until a month's wage or income has accumulated (even if it be partly collected, and partly still in the hands of the employer, though earned), there can be no garnishment against the income of "forty dollars or less." The legislature had in mind the earning of a monthly sum. It was impossible to state in advance the varying sums that might be earned per month by workers obtaining less than $40. So a percentage was fixed on the monthly wage, or income, whatever it might be. But that percentage could not be applied until the monthly income could be ascertained. We do not think it was intended by the legislature that at any time during the running of the month any small sum in the hands of an employer owing to an employee should be subject to garnishment; that a creditor should be permitted to stand by and seize earnings day by day, or week by week. Such harassing litigation would be oppressive and intolerable. It is true that vexatious litigation of this character is to some extent prevented by the provision that the debtor shall be subjected to the

costs of only one garnishment on each debt sued on.
This might prevent any given creditor from gar-
nisheeing overmuch, but would not apply to several
creditors, each of whom might run his own garnish-
ment, thus making the embarassment of the poor
debtor even greater.  It is no doubt true that this
construction will make the chance of creditors real-
izing on very small debts, through garnishment pro-
ceedings, somewhat precarious, and may result, in
some instances, in a practical defeat of such efforts.
But it is only by this construction that all parts of
the statute can be harmonized, and a seemingly un-
fair discrimination among debtors avoided.  We are
convinced that we have reached the true mean-
ing of the legislature.

The propriety of this conclusion may be further
illustrated, and even fortified, by a brief review of
our statutes and decisions on this vexed subject.

Acts 1871, chapter 71, section 1:

"There shall be exempt from execution, attach-
ment or garnishment, thirty dollars of the wages of
mechanics or other laboring men:  Provided, that
the lien created by services of garnishment, shall
only affect that portion of a laborer's wages that
may be due at the time service is made, and not
any future wages."

Construing this act, the court held in *Waite* v. *Fran-
ciola,* 90 Tenn., 191, 16 S. W., 116, that the exemption
of $30 protected wages within that amount due at
the date of service of the particular garnishment,

although upon other prior garnishments in the same case there had been allowed the debtor other exemptions of wages within the month aggregating more than $30. It was held that the exemption should be carved out of wages due at the date of the service of the particular garnishment, not out of wages due for one month or any other particular period. Said the court:

"The meaning is plain. If the sum due at date of service of garnishment is less than $30, then it is exempt, regardless of any exemptions theretofore obtained by the debtor. There is no authority for the construction limiting the exemption to $30 out of the wages of one month or any other particular time."

In *Van Vleet* v. *Stratton,* 91 Tenn., 473, 19 S. W., 428, it was held under our general garnishment laws that the employee could prevent a garnishment by collecting his wages in advance. The employee was working by the month, and the employer had paid his full wages in advance at the beginning of each month.

Acts 1895, chapter 192: "Hereafter no attachment or garnishment shall be issued to attach or garnishee the future salary or wages of an employee, or other person, but any such attachment or garnishment shall only be for salary or wages due at the date of the service of the garnishment or attachment."

This, evidently, was passed to meet a proposition contained in *Van Vleet* v. *Stratton,* supra, to the effect that if at the time of the service of the garnishment a debt be in existence, due or undue, "the same may be seized and impounded." This statute should

also be considered in connection with the general rule sanctioned by our statutes, and expounded by Mr. Justice WILKES, in *Lockett* v. *Beaver,* 97 Tenn., 396, 37 S. W., 140, to the effect that, except under the exemption statutes the garnishment holds not only what may be due the debtor at the time the garnishment shall be served, but also anything that may be owing whether due or undue when the garnishee makes his answer. Obviously the purpose of the statute just quoted was to remove "'the salary or wages of an employee of other person" from the operation of the general rule.

The court construed and applied this statute in *Weaver* v. *Hill,* 97 Tenn., 402, 37 S. W., 142. The facts in that case were: The garnishment was served on the railway company, Weaver's employer, on February 20, 1896, returnable March 5, 1896. The company answered that at the time the garnishment was served it was indebted to Weaver for wages as a laborer in the sum of $42.05, and that Weaver claimed an exemption of $30 of this amount as laborers' wages. A custom was proven to the effect that wages were payable on the 20th of each month for the previous month, and that under this custom the wages were treated as due at that time; that when the garnishment was served the company owed Weaver for January, 1896, $28, and for February $14.65; that the amount owing for January was then due and payable, but the amount earned and owing for February, 1896, was not due and payable until

the 20th of March, 1896. Thus it appears the whole
amount earned and owing was $42.65, but of this,
$14.65 was not due when the garnishment was served.
The circuit judge allowed Weaver $30 for his ex-
emption, but subjected the remaining $12.65. This
was held erroneous by this court on the ground that
so much of the debt as was undue when the garnish-
ment was served was unaffected by it, by the very
terms of the statute.

Acts 1899, chapter 1: This statute amended the
act of 1895 by striking out the word "due," and
substituting for it the word "earned."

Acts 1899, chapter 38:

"That $30.00 shall be exempt from execution,
seizure, or attachment of the wages of any employee in
the State."

Next comes our last act on the subject, Acts 1905,
chapter 376. This we have reproduced on an earlier
page of this opinion as the act which controls the
controversy before us.

The legislature had before it the prior acts, and
we have no doubt the decisions of this court as well.
Its purpose was to overcome the difficulties and
incongruities that had become manifest. It was
perceived that the round exemption of $30 could not
be retained in accord with a sound policy, because
that would deprive a large number of small wage-
earners of a needed credit, in times of want, since
dealers would advance them nothing where no
prospect of legal compulsion appeared. So the plan

of classification already commented on, with the ten
per cent. of liability for debts, and ninety per cent.
exemption, was adopted. But a scale was needed to
measure the amount on which the percentage could be
calculated. That scale was the month—the monthly
earning or income. That was a new thought in the
development of these statutes. It had been decided
by this court, in an opinion cited supra, in construing
chapter 71 of the Acts of 1871, that the fixing of a
monthly period was incompatible with the gross
exemption of $30; that the statute just referred to
furnished no authority for such a measure. The
decision was undoubtedly right, as a construction of
that particular statute. But now the legislature,
having all of the prior acts before it, and all of the
decisions of the court construing these acts, and
being engaged in the work of overhauling the whole
matter and providing a better system, passed the act
of 1905, and made a part of it the monthly earning as
the principle on which to base the whole scheme ot
wage and income exemption. It was further improved
by adding the monthly income test figure, $40, on one
side of which ranged the class of earners of more
than $40 monthly, on the other earners of $40 or
less monthly. There was preserved the principle es-
tablished by chapter 1 of the Acts of 1899 that the
debt, to be the subject of garnishment, need not be
due at the date of the service of the process, but
must be earned. There are other improvements that
may be noted. Chapter 71 of the Acts of 1871 in its
wage feature applied only to ''mechanics or other

laboring men.'' Chapter 192 of the Acts of 1895 advanced a step further and protected the ''salary or wages of an employee or other person.'' Chapter 38 of the Acts of 1899 took a step backwards and confined the exemption to ''the wages of any employee in the State.'' The act of 1905 protects ''every person'' who is a resident of the State of the age specified, or is head of a family, and who earns the monthly salary, or wages, or has the monthly income, specified therein; that is to every person of the description mentioned who has an income of any kind, since any such person must have an income of ''over forty dollars,'' or of ''forty dollars or less.'' Of course it covers those who work by the piece as well as those who work for wages in the usual way. *Adcock* v. *Smith,* 97 Tenn., 373-377, 37 S. W., 91, 56 Am. St. Rep., 810.

So, it is perceived this statute was intended to cover the whole subject of salary, wage, or income exemption, and takes the place of all others. *Malone* v. *Williams,* 118 Tenn., 390, 445, 103 S. W., 798, 121 Am. St. Rep., 1002; *State ex rel.* v. *Vanderbilt University,* 129 Tenn., 326, 164 S. W., 1151.

Having settled the foregoing principles, it is manifest that the judgment of the trial court must be affirmed. The plaintiff in error belonged to the class composed of those earning over $40 per month; so it is clear he was entitled to an exemption of only $36. This was allowed him, and judgment rendered for the balance, which was correct. The judgment should therefore be affirmed, with costs.