**JOHN HANCOCK MUTUAL LIFE INSURANCE COMPANY**

v.

**FROST NATIONAL BANK OF SAN ANTONIO et al.**

Civ. No. 3–74–176.

United States District Court, E. D. Tennessee, N. D.

Nov. 15, 1974.

■■■■■■■■■■■

Clyde W. Key, Key, Lee & Lawyman, Knoxville, Tenn., for plaintiff.

Norbert J. Slovis, Lockett, Slovis & Weaver, William G. Cockrill, Egerton, McAfee, Armistead, Knoxville, Tenn., Davis & McCord, P. C., for defendants.

## MEMORANDUM

ROBERT L. TAYLOR, District Judge.

This interpleader action was filed by the John Hancock Mutual Life Insurance Company [hereinafter referred to as the "insurer"] pursuant to Title 28 U.S.C. § 1335. The insurer disclaims any interest in a $100,000.00 fund which it holds as proceeds of a certain policy of life insurance. It has interpleaded the beneficiaries of the policy and a judgment creditor of two of those beneficiaries for the purpose of establishing their respective rights to payment from proceeds of the fund.

The parties have agreed that there are no disputed questions of fact and that the Court should declare what rights, if any, the rival claimants have to the proceeds of the funds.

Mrs. Coleen L. Johnson (formerly Longmire) purchased a policy of life insurance in the principal sum of $100,-000.00 on the life of her husband, C. Homer Longmire, on July 12, 1966. (Exhibit A to the stipulations).[1] She paid only one monthly premium in the amount of $1,017.00 before her husband died on July 30, 1966. Exhibit B to the stipulations is a copy of the "Supplementary Agreement for Benefit Payments" [hereinafter referred to as the "settlement agreement"] which incorporates and includes the "Designation of Beneficiaries" and "Election of Settlement Option" executed by Mrs. Johnson on September 29, 1966. Exhibit C to the stipulations is a copy of the "Trust Indenture of the Carole Ann S. Kordsmeier Trust" [hereinafter referred to as the "trust" or "trust agreement"].

The rival claimants in this action are the judgment creditor, Frost National Bank of San Antonio, Texas, and the beneficiaries of the insurance policy.[2] A Guardian Ad Litem was appointed for the minors named in the trust agreement.

The Frost National Bank bases its claim to the proceeds of the fund on a judgment obtained on an indebtedness due by Coleen L. Johnson and Raymond D. Longmire in the amount of $98,194.47, plus interest from the date of judgment. This judgment was obtained in the United States District Court for the Western District of Texas on August 31, 1973 and has been filed in this Court.

The parties have stipulated that at the time of the purchase of the policy in question, the execution of the settlement agreement, and the creation of the trust agreement, there was no intent to defraud the Frost National Bank and that the bank became a creditor of Coleen L. Johnson and R. D. Longmire after these events occurred.

The Frost National Bank caused a writ of *fieri facias* to be served on the insurer through the Commissioner of Insurance of the State of Tennessee on April 19, 1974. The parties have treated this writ as a writ of garnishment and the case was considered on that basis. The insurer has withheld three monthly installments of $208.00 due Mrs. John-

---

1. The original policy was apparently destroyed in the ordinary course of business by the insurer when the policy became payable. Exhibit A is a specimen copy.

2. The beneficiaries are named in the "Change of Beneficiary Designation" executed by Mrs. Johnson on September 29, 1966, which is in-

corporated into Exhibit B. The beneficiaries are as follows: (1) "Primary Beneficiary Class"—Coleen S. Longmire [now Johnson].

(2) "Secondary Beneficiary Class"—Raymond D. Longmire, son and Valley Fidelity Trust Co. and Raymond D. Longmire, Trustees of the Carole Ann L. Kordsmeier Trust dated June 23, 1966.

son since April 12, 1974 and has paid $624.00 into the registry of the Court.

The basic issues the Court must determine are how much of the proceeds of the fund, if any, does the execution reach, and if the proceeds are subject to execution, by what method are such proceeds to be paid?

■ The rights of a garnisheeing creditor are no higher than those possessed by the judgment debtor against the garnishee. Hamilton National Bank v. Long, 189 Tenn. 562, 567, 226 S.W.2d 293 (1949); Gray v. Houck, 167 Tenn. 233, 236, 68 S.W.2d 117 (1934).

"Garnishment proceedings serve only to subrogate the plaintiff therein to the rights of the debtor against the garnishee, and the plaintiff can enforce no rights against the garnishee that his debtor could not enforce." Dickson v. Simpson, 172 Tenn. 680, 687, 113 S.W.2d 1190, 1192 (1938).

■■ In the present case, the relationship between the garnishee (the insurer) and the judgment debtors (Mrs. Coleen L. Johnson and Mr. R. D. Longmire) is governed by the settlement agreement (Exhibit B). Under the express terms of that agreement Mrs. Johnson made an irrevocable election of settlement option on September 29, 1966.[3] By virtue of this agreement, the insurer is contractually bound to make payments of the proceeds in accordance with the provisions of the settlement agreement.[4] Thus, until such time as Mrs. Johnson, as the primary beneficiary, may die, the Frost National Bank is entitled to no more than the monthly payments which become due and owing to Mrs. Johnson under the settlement agreement.[5] Under the applicable statutes all of the proceeds of the fund were attached in the garnishment proceeding even though the proceeds are payable in installments.[6] *See*

3. The agreement provides as follows: "This election of settlement option shall not be varied by any beneficiary except as expressly authorized by the provisions herein." Additionally, under "withdrawal Rights," the primary beneficiary has no right to withdraw the proceeds held on deposit by the insurer. Exhibit B, p. 3.

4. Under the "Election of Settlement Option" provision of the settlement agreement (Exhibit B, p. 3), the insurer is obligated to pay interest income under "Option 1" of the policy (See Exhibit A, p. 4) until July 12, 1976. This income is payable to the primary beneficiary unless the primary beneficiary dies and, in that event, to the secondary beneficiaries. Beginning July 12, 1976, the insurer is obligated to pay the principal over a fixed period of ten years in amounts specified by the insurer but not less than the amount specified by table for "Option 2B." (See Exhibit A, p. 4). These payments are also payable to the primary beneficiary unless the primary beneficiary dies, and, in that event, to the secondary beneficiaries.

5. Counsel for the Frost National Bank argues that under paragraph 15 of Exhibit B (p. 4), the "Election of Settlement Option" executed by Mrs. Johnson (Exhibit B, p. 3) is revocable and therefore the Bank is entitled to a lump sum satisfaction of its claim since it is subrogated to Mrs. Johnson's rights under the agreement. Paragraph 15 provides: "EFFECT OF ELECTION OF A LIFE IN-

COME AFTER SETTLEMENT DATE. No change of option or withdrawal of proceeds shall be permitted after the election of a Life Income option if the election is made on or after the Settlement Date." Counsel's position is that since Mrs. Johnson did not elect a Life Income option (See Exhibit A, p. 4), the implication is that the settlement option she did select is revocable. To accept this reasoning would be to ignore the express terms of the settlement agreement which clearly make Mrs. Johnson's election of settlement option irrevocable. *See* n. 3, *supra*.

6. T.C.A. § 23-701 provides as follows: "*Assets subject to garnishment.*—Where property, choses in action, or effects of the debtor are in the hands of third persons, or third persons are indebted to such debtor, the attachment may be by garnishment."
   T.C.A. § 23-713 provides: "*Execution on maturity of debt.*—If the debt of the garnishee to the defendant is not due, execution will be suspended until its maturity."
   T.C.A. § 26-505 provides: "*Property subject to garnishment.*—All property, debts, and effects of the defendant in the possession of the garnishee, or under his control, shall be liable to satisfy the plaintiff's judgment, from the service of the notice, or from the time they came to his hands, if acquired subsequent to the service of notice, and before judgment. The words 'property, debts, and effects,' include real estate and

Annot. 7 A.L.R.2d 680 (1949) for cases approving this method of enforcing judgments by garnishment of installment payments. The obligation of the insurer to make installment payments under the settlement agreement is a fixed and absolutely existing debt, the payments being merely postponed and divided into installments. Such debts are subject to attachment by garnishment. *Compare* In Re Anderson, 345 F.Supp. 840 (E.D. Tenn.1972); Gray v. Houck, *supra.*

▮▮ Counsel for the Frost National Bank contends that should the Court find that the "Election of Settlement Option" executed by Mrs. Johnson is irrevocable, then that election amounts to a void "spendthrift trust." If the "Election of Settlement Option" were construed as a spendthrift trust, it would be void since the "settlor" (Mrs. Johnson) would have created it with her own property and for her own benefit. State ex rel v. Nashville Trust Co., 28 Tenn.App. 388, 401–402, 190 S.W.2d 785 (1945). The settlement agreement does not establish a trust, spendthrift or otherwise.[7] The insurer retains the proceeds of the policy subject only to its obligation to make payments in accordance with the settlement agreement. There is no requirement that the money be kept as a separate fund on behalf of certain beneficiaries. The settlement agreement creates the relationship of debtor and creditor between the parties to it rather than that of trustee and settlor. *See* Cohen v. Cohen, 126 N.J.L. 605, 20 A.2d 594 (1941). The Court must not interfere with the contract rights of the insurer as the insurer is entitled to rely on the terms of the contract in planning and managing its business affairs.

The next question which must be answered is what rights, if any, does the Frost National Bank have to the proceeds of the fund should the primary beneficiary die before the expiration of the twenty year payment period? If this eventuality occurs, the proceeds become payable to the secondary beneficiary classes in equal shares. (Exhibit B, p. 4, para. 3). Thus, Raymond D. Longmire is entitled to one-half of the payments that would be owing the secondary beneficiaries and the trust would be entitled to the other half of the payments. The parties concede that the Frost National Bank would succeed to the interest of Mr. Longmire should he become entitled to payments from the fund as a secondary beneficiary. Furthermore, if and when Mr. Longmire becomes entitled to payments under Option 2B, the Frost National Bank would be subrogated to his right to receive the discounted value of any remaining payments due him.[8]

▮ A more difficult question arises with respect to what interest, if any, do the beneficiaries of the trust agreement have in the proceeds of the fund should Mrs. Johnson die within the twenty-year payment period? The interest that the beneficiaries of the trust have in the proceeds is in the nature of a contingent interest because Mrs. Johnson retained the power to change the beneficiaries in the settlement agreement. *See* Merritt v.

---

choses in action, whether due or not, and judgments before a justice of the peace; also money or stocks in an incorporated company."

7. It is to be noted that the settlement agreement does not have the effect of a spendthrift trust in that it does not put Mrs. Johnson's assets beyond the reach of creditors although it does control the manner and time of payments to creditors so as to be consistent with the rights of the insurer.

8. The "Election of Settlement Option" provides as follows: "(3) Disposition at Primary Beneficiary's Death of Proceeds Applied under Options 2B, 3, or 5. At the death of the Primary Beneficiary, any fixed or guaranteed payments remaining to be paid under Option 2B or Option 3 shall be continued to the end of the fixed or guaranteed period to the Secondary Beneficiary, if living on the date each respective payment is due and the Secondary Beneficiary shall have the right at any time to receive the discounted value of any remaining payments." Exhibit B, p. 3.

Scruggs, 172 Tenn. 368, 112 S.W.2d 825 (1938). "Part 1. Change of Beneficiary Designation" (Exhibit B, p. 3) states on its face that it is revocable,[9] and Mrs. Johnson retains the right to control the disposition of the proceeds of the fund by giving written notice to the insurer.[10] Exhibit B, p. 2. Since Mrs. Johnson has this right to control the disposition of the proceeds, the Frost National Bank is entitled to be subrogated to that right in satisfaction of its judgment. Dickson v. Simpson, *supra*, 172 Tenn. at 687 113 S.W.2d 1190; *Compare* Hamilton National Bank v. Long, 189 Tenn. 562, 226 S.W.2d 293 (1949) reh. denied (1950).[11] If and when the trust would otherwise become entitled to payments under Option 2B, the Frost National Bank would be entitled to receive the discounted value of any remaining payments due the trust.[12]

■ Finally, the contention is made that Mrs. Johnson is entitled to certain statutory exemptions with regard to the monthly installments that are the subject of the garnishment. Specifically, it is asserted that TCA §§ 26–201 and 26–207 exempt a portion of the payments from execution. Under Section 201, set out in the margin,[13] it is incumbent upon a debtor seeking the $1,500 personal property exemption to prove that he or she is, in fact, the "head" of a family. Further, if the $900 exemption were to be claimed, the debtor must prove that he or she "is not residing with a head of a family . . . ." The record shows that Mrs. Johnson has remarried since the death of the insured, and that she is now living with her husband.

■ Mrs. Johnson would also claim an income exemption under T.C.A. 26–207.[14] This statute must now be

9. This provision provides: "All previous designations of beneficiaries and all elections of Optional Methods of Settlement applicable to proceeds payable as a death benefit under this policy are hereby revoked. The following *revocable* designation of beneficiary is made subject to the provisions of the policy except as otherwise provided herein." [emphasis added].

10. It was stated in oral argument, and apparently conceded by the respective parties, that had Mrs. Johnson made an unconditional gift of some or all the proceeds of the fund to the trust in 1966, that gift would be beyond the reach of Frost National Bank in seeking to satisfy its judgment. See Crudgington v. Hogan, 105 Tenn. 448, 58 S.W. 642 (1900). But where a judgment debtor makes an appropriation in trust that is revocable, it has been held that this will not defeat subsequent garnishment proceedings. *See* 38 C.J.S. Garnishment § 82 (1943).

11. " 'The garnishee can be held only to the extent of the defendant's claim against him. Hence plaintiff can enforce no right against the garnishee that defendant himself could not enforce, or reach assets in possession of the garnishee which defendant could not recover from the garnishee.' 38 C.J.S. Garnishment page 396, § 176." On petition to rehear, 189 Tenn. at 570, 226 S.W.2d at 297.

12. See n. 8, *supra*, and accompanying text.

13. "26–201. Personal property exemptions.— Personal property to the aggregate value of

one thousand five hundred dollars ($1,500) shall be exempt from execution, seizure or attachment in the hands or possession of a head of a family who is a bona fide citizen permanently residing in Tennessee, whether said head of a family be the husband or father, or the mother where the father or husband is dead or has absconded or deserted his family; and such head of a family shall be entitled to this exemption without regard to his vocation or pursuit or to the ownership of his abode. Such head of a family may select for exemption the items of then owned and possessed personal property up to the aggregate value of one thousand five hundred dollars ($1,500).

"Personal property to the aggregate value of nine hundred dollars ($900) shall be exempt from execution, seizure or attachment in the hands or possession of a person who is not a head of a family and who is not residing with a head of a family if such person is a bona fide citizen permanently residing in Tennessee, and such a person shall be entitled to this exemption without regard to his vocation or pursuit or to the ownership of his abode. Such person may select for exemption the items of then owned and possessed personal property up to the aggregate value of nine hundred dollars ($900)."

14. This statute provides, in pertinent part, as follows:
"Income of head of family.—There shall be exempt from execution, attachment and garnishment fifty percent (50%), or twenty dol-

read in light of Title 15 U.S.C. §§ 1671–1677 (1970) for the purposes of determining what exemptions a wage-earner may claim. In the instant case, however, the exemption sought to be claimed is not the result of the rendition of "personal services" as is contemplated in the federal statutes. See Title 15 U.S.C. § 1672(a). Counsel for Mrs. Johnson contends that Section 207 is broader in coverage than the federal statute since the former applies to "salary, wages, or *income*." (emphasis added.) [15] The Tennessee Supreme Court has defined the term "income" in a predecessor statute (Chapter 376 of the Acts of 1905) as follows:

> "It is essential to the purpose intended to be effected by the act that the test sum shall embrace what the debtor may have collected from his employer, or received from his 'income' from any other source, during the month, as well as the sum that may belong to him, earned, or collectible from any source, but not actually received by him at the time the garnishment is served." Frazier v. Nashville Veterinary Hospital, 139 Tenn. 440, 444, 201 S.W. 751, 753 (1917).

Despite this broad definition of "income" under the earlier statute, the Court is of the opinion that insurance settlement proceeds do not fall within the meaning of "income" in Section 207. The statute contemplates exemption from execution, attachment and garnishment with respect to earned income. For example, the statute reads in part: "The

lien created by the service of the garnishment, execution or attachment shall affect only such salaries, wages or income earned at the time of service of the process." Also indicative that the statute deals with earned income is the fact that it speaks in terms of "employer," "social security and withholding taxes," and "weekly salary, wages or income."

This statute provides protection for debtors subject to periodic garnishments of earned income. In the instant case the original execution attached all proceeds of the policy whether payable immediately or in the future. Attachment of such "unearned income" is not contemplated by Section 207.

In summary, the Frost National Bank is entitled to receive all monthly payments otherwise due Mrs. Johnson from the insurer beginning April 12, 1974, in accordance with the terms of the "Election of Settlement Option" of the settlement agreement. Should Mrs. Johnson die within the twenty year payment period, the Frost National Bank is entitled to all payments which would otherwise be due Raymond D. Longmire. The Bank would also be entitled to all payments presently designated for the trust, provided it exercises the right to designate itself as a secondary beneficiary to the exclusion of the trust—a right now reserved to Mrs. Johnson. Any payments made to the Bank in lieu of Mr. Longmire or the trust are to be made in accordance with the terms of the "Election of Settlement Option" of the settlement agreement. Mrs. Johnson is not entitled to the statutory exemptions under T.C.A. §§ 26–201 and 26–207.

---

lars ($20.00) per week, whichever is greater of the total weekly salary, wages or income of every person who is the head of a family and who is a resident of the state of Tennessee subject to a maximum total exemption of fifty dollars ($50.00) a week, and forty per cent (40%), or seventeen dollars and fifty cents ($17.50), whichever is greater, of the total weekly salary, wages or income of every person who is not the head of a family and who

is a resident of the state of Tennessee, subject to a maximum total exemption of forty dollars ($40.00) a week. The lien created by the service of the garnishment, execution or attachment shall affect only such salaries, wages or income earned at the time of service of the process.

15. Such a construction, if valid, would not be in conflict with the federal statutes. *See* Title 15 U.S.C. 1677(1).